IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NORA WHITE, )
)
       Plaintiff, )
)
vs. ) Case No. 16-cv-815-JPG-CJP
)
NANCY A. BERRYHILL, )
)
       Defendant.[1] )

### MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Nora White, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

### Procedural History

Ms. White applied for benefits in April 2013, alleging disability beginning on April 2, 2013. After holding an evidentiary hearing, ALJ Denise M. Martin denied the application for benefits on November 18, 2014. (Tr. 17-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issue Raised by Plaintiff

Plaintiff raises only one point, that is, that the ALJ ignored the results of a pulmonary function study done on September 12, 2013.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court

must determine not whether Ms. White was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

ALJ Martin followed the five-step analytical framework described above. She determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. She found that plaintiff had severe impairments of chronic obstructive pulmonary disease, asthma, sacral radiculopathy, degenerative disc/joint disease, depression, and anxiety, and that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. White had the residual functional capacity (RFC) to perform work at the light exertional level with some physical and mental limitations. To accommodate plaintiff's respiratory problems, she limited her to no concentrated exposure to dust or fumes. Based on the testimony of a vocational expert, the ALJ found that plaintiff could not do her past

relevant work. However, she was able to do other jobs which exist in significant numbers in the national and regional economies, and she was, therefore, not disabled.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff.

**1.     Agency Forms.**

Plaintiff was born in 1961 and was 51 years old on the alleged onset date of April 2, 2013. (Tr. 184). She had worked as a certified nurse's aide in nursing homes. (Tr. 178).

**2.     Evidentiary Hearing.**

Ms. White was not represented by an attorney at the evidentiary hearing in September 2014. (Tr. 34).

The ALJ asked plaintiff why she was unable to work. She answered that she had an old back injury, that her coccyx bone "does not sit straight," her hips "feel like they're in a vise constantly," and her back was hurt when a doctor put her on a treadmill. She said her breathing "has some to do with it." She has COPD and uses inhalers twice a day. (Tr. 42-43).

A vocational expert (VE) also testified, but, in view of the sole issue raised by plaintiff, it is not necessary to summarize his testimony.

**3.     Medical Records.**

In April, 2013, plaintiff was admitted to the hospital with influenza A. A chest x-ray showed that her lungs were hyperinflated but clear bilaterally. There was no acute abnormality. (Tr. 243-247).

In June 2013, plaintiff was seen by Dr. Francisco Quinones. She complained of shortness of breath. She weighed 113 pounds. He noted that pulmonary function tests showed "mild obstruction," hyperinflation and air trapping, reversibility, and normal DLCO. She smoked a pack of cigarettes a day. On exam, respiratory effort was normal with no accessory muscle usage. There was no respiratory distress. She had decreased breath sounds, but no wheezes, rhonchi, or rales. The assessment was asthma. She was to try Spiriva and to stop smoking. She was to return in six months. (Tr. 267-269). The FEV1 reading on the pulmonary function test was 1.79. The results were interpreted at showing mild obstructive ventilator defect and a clear and significant bronchodilator response. (Tr. 270).

In September 2013, a pulmonary function test resulted in an FEV1 reading of 1.3. The report stated, incorrectly, that she was 71 inches tall. (Tr. 304).

Ms. White began seeing Dr. Brandon Luk in June 2014. She was seen for depression and COPD. She was 61 inches tall and weighed 111 pounds. She was instructed to increase her use of Symbicort in an inhaler to two times per day. (Tr. 322). She was continued on that dosage in July 2014. (Tr. 318).

In August 2014, Dr. Luk wrote, "Breathing is stable at rest with medications COPD is well controlled. Still smoking." She denied dyspnea, i.e., shortness of breath. (Tr. 342). She was to continue using Symbicort two times a day. (Tr. 346).

In September 2014, an MRI of the lumbar spine showed mild degenerative disc and joint disease at L3-4 and L4-5. (Tr. 349). An x-ray of the sacrum and coccyx was negative. (Tr. 354).

## Analysis

Plaintiff is correct that the ALJ did not mention the September 2013 pulmonary function study. However, that omission does not require reversal.

The doctrine of harmless error applies in judicial review of administrative decisions. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). An ALJ's error is harmless where, having looked at the evidence in the record, the court "can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). In *McKinzey*, the ALJ erred in not discussing the opinion of a state agency physician. However, the Seventh Circuit held that the error was harmless because "no reasonable ALJ would reach a contrary decision on remand" based on that opinion. *Ibid*. In contrast, the doctrine does not apply where a review of the record only establishes that that "the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does." *Spiva*, 628 F.3d at 353. If all that can be said is that the ALJ might reach the same conclusion after carefully considering the entire record, then the error cannot be deemed harmless. *Ibid*.

The September 2013 test resulted in an FEV1 score of 1.3. (Tr. 304). Plaintiff argues that this score is "indicative of a severe obstruction." Doc. 14, p. 5. However, as plaintiff admits, the report incorrectly states that she is 71 inches tall. In addition, the report says she weighed 176 pounds. This also appears to be a mistake, as plaintiff weighed 113 pounds in June 2013 and 111 pounds in June 2014. (Tr. 268, 322).

The type of pulmonary function testing that was administered to plaintiff is called spirometry. Spirometry measures how well the patient moves air into and out of her lungs. It involves "forced expiratory maneuvers." A forced expiratory maneuver is a maximum inhalation

followed by a forced maximum exhalation. FEV1 is the volume of air the patient exhales in the first second of the forced expiratory maneuver. See, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 3.00, Respiratory Disorders, paragraph 3.00E. Acceptable levels of FEV1 vary according to the patient's height. For example, a person who is 60 to 63 inches tall meets the Listing for Chronic Pulmonary Insufficiency at FEV1 1.15. In contrast, a person who is 70 to 71 inches tall meets the criteria at FEV1 1.65. Listing 3.01, Table 1. Thus, while an FEV1 result of 1.3 would be very low and at listing level for a person who is 71 inches tall, it would not be that low for a person who is only 61 or 62 inches tall.

This Court concludes that no reasonable ALJ would find plaintiff disabled on the strength of the September 2013 FEV1 score. First, it is obvious that the September 2013 FEV1 results are invalid because incorrect information on the patient's height was entered into the testing equipment and used to calculate the results. Secondly, plaintiff herself ignores the fact that, after she began using Symbicort two times a day for a few months, Dr. Luk described her COPD as well controlled with medications. (Tr. 342).

Plaintiff has not identified any error other than the failure to mention the September 2013 FEV1 score. That error, if it was error at all, was harmless. Therefore, the ALJ's decision will be affirmed.

## **Conclusion**

After careful review of the record as a whole, the Court is convinced that ALJ Martin committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Nora White's application for disability benefits is **AFFIRMED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:** 5/24/2017

        *s/J. Phil Gilbert*
        **J. PHIL GILBERT**
        **U.S. DISTRICT JUDGE**